IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

WILLIAM STEVE OWENS                                              PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 5:04cv304-DCB-JCS

UNITED STATES OF AMERICA                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the government's Motion to Dismiss or in the Alternative for Summary Judgment [**docket entry no. 9**]. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

## FACTS

On November 17, 2004, William Owens ("Owens") filed the complaint in this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* Owens' claim is based on alleged negligence by medical staff members and prison officials at the Federal Correctional Institution in Yazoo City, Mississippi (the "FCI Yazoo City" or the "facility") for negligent failure to provide proper medical treatment to the plaintiff while he was housed at the facility as an inmate.[1]

Specifically, Owens alleges that on August 13, 2003, he reported to a nurse practitioner at the facility that he had been assaulted by another inmate and struck in the jaw. The nurse

---

[1] The FCI Yazoo City is presently known as the Federal Correctional Complex in Yazoo City.

practitioner examined his jaw, determined that it still had a full range of motion and decided not to prescribe any treatment for the injury.  See Inmate Assessment and Followup dated Aug. 13, 2003 (attached as Ex. 2 to Def. Memo. in Support of Motion to Dismiss). Owens was seen later that same day by a registered nurse as he continued to complain about jaw pain.  The registered nurse gave Owens some pain medication and advised him to make sick call the following morning.  See Chronological Record of Medical Care dated Aug. 13-15, 2003 (attached as Ex. 2 to Def. Memo. in Support of Motion to Dismiss).  The following day, Owens was seen by a dentist and x-rays were taken of his jaw.  The dentist did not detect any fractures, prescribed two medications and advised Owens to follow-up with other medical staff at sick call.  See Clinical Dental Records dated Aug. 14, 2003 (attached as Ex. 3 to Def. Memo. in Support of Motion to Dismiss).  On August 15, 2003, Owens was seen by the Clinical Director, who assessed him with Temporomandibular Joint Pain (TMJ) and prescribed pain medication for treatment.  See Clinical Dental Records dated Aug. 15, 2003 (attached as Ex. 3 to Def. Memo. in Support of Motion to Dismiss).

As of August 25, 2003, Owens was still suffering jaw pain, and he was seen on that day by the Chief Dental Officer.  See Dental Treatment Record dated Aug. 25, 2003 (attached as Ex. 4 to Def. Memo. in Support of Motion to Dismiss).  The Chief Dental Officer prescribed more pain medication, ordered that Owens be given a soft diet for thirty days and directed the previous x-rays to a

radiologist for review.  Id.  On August 26, 2003, Owens was taken to the local hospital for further evaluation.  See Records from the University Hospitals and Clinics dated August 26-27, 2003 (attached as Ex. 5 to Def. Memo. in Support of Motion to Dismiss).  Staff at the hospital determined that Owens had suffered a fractured jaw with minimal displacement.  Id.  Owens was offered the opportunity to undergo surgery to correct the fracture; however, he refused and was returned to the facility.  Id.

The next morning, on August 27, 2003, Owens advised the Clinical Director that he had changed his mind and wished to undergo the surgery to have his jaw mended.  See Chronological Record of Medical Care (attached as Ex. 7 to Def. Memo. in Support of Motion to Dismiss).  Owens was transported the next day for consultation with an oral surgeon, but the doctor determined that the jaw had already begun to heal and that it was necessary to refracture the jaw in order to properly set it.  See Medical Records, Consultation Sheet dated Aug. 28, 2003 (attached as Ex. 8 to Def. Memo. in Support of Motion to Dismiss).  Since this procedure would require extensive rehabilitative therapy, a request was made to transfer Owens to a Bureau of Prison Medical Center.  See Memo. in Support of Motion to Dismiss, at 5.  That request, however, was denied by the Office of Medical Designations.  See Dental Treatment Record dated Dec. 3, 2003 (attached as Ex. 10 to Def. Memo. in Support of Motion to Dismiss).

In December 2003, Owens was again evaluated by an oral

surgeon, who determined that surgery would not be beneficial inasmuch as it could result in Owens' condition being only marginally better or even make it worse. The oral surgeon advised the Chief Dental Officer that if Owens' jaw was still bothering him, then it was recommended that he undergo an occlusal adjustment. <u>See</u> Medical Records, Consultation Sheet dated Jan. 13, 2004 (attached as Ex. 11 to Def. Memo. in Support of Motion to Dismiss). This treatment was offered to Owens by the Chief Dental Officer on January 15, 2004; however, Owens refused to undergo the treatment. <u>See</u> Dental Treatment Record dated Jan. 13-15, 2004 (attached as Ex. 12 to Def. Memo. in Support of Motion to Dismiss).

The subject complaint was filed on November 17, 2004, wherein the plaintiff alleges that the denial of the surgery to the plaintiff when it was known to be necessary and non-elective was wanton and willful and/or negligent conduct on the part of employees of the United States. The government filed the instant Motion to Dismiss or, in the Alternative, for Summary Judgment on May 4, 2005. This opinion will consider the defendant's motion as a motion for summary judgment.

## DISCUSSION

### I.   Standard for Summary Judgment

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Fed. R. Civ. P.</u> 56(c). The moving party has

the initial burden of identifying relevant portions of the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A contested fact is "material" when it has the potential to change the outcome of the case.  Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  Id.

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists.  Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation."  Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The non-movant must "designate specific facts showing the existence of a genuine issue for trial."  Anderson, 477 U.S. at 250.  "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment."  Id. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an

element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the non-movant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  Jurisdiction and Choice of Law

In his complaint, the plaintiff asserts 28 U.S.C. § 2671 *et seq.*, the Federal Tort Claims Act (FTCA), as the basis for subject matter jurisdiction in this action. The FTCA provides that the United States District Courts have exclusive jurisdiction over

actions asserting damages caused by the "negligent or wrongful acts or omissions of an employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  Therefore, this Court has jurisdiction over this suit, and, inasmuch as the alleged events giving rise to this action occurred in Mississippi, the law of that state will apply.

## III.  Exhaustion of Remedies

Pursuant to 28 U.S.C. § 2675, no action for money damages may be brought under the FTCA unless the claimant has first presented his or her claim to the appropriate federal agency and had that claim finally denied in writing.  The government agrees that Owens properly filed tort claim number TRT-SER-2004-01196 on December 24, 2003, with the appropriate agency.  That claim was denied.  Thus, Owens has properly exhausted the administrative remedy requisite prior to filing the instant suit.

## IV.  Negligence

A plaintiff must establish four elements to prove negligence: (1) that the defendant owed to the plaintiff a duty, recognized by law, to conform to a certain standard of conduct; (2) a breach of that duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the plaintiff.  <u>Carpenter v. Nobile</u>, 620 So. 2d 961, 964 (Miss.

1993).

(1) Duty of Care

It is not disputed by the defendant that the government owed Owens a duty of care.  Pursuant to 18 U.S.C. § 4042, "the Bureau of Prisons will have charge of the management and regulation of all Federal penal and correctional institutions and provide for the safekeeping, care, and subsistence of all person charged with or convicted of offenses against the United States."  In performing this duty, governmental employees must exercise "ordinary diligence" in keeping federal prisoners safe from harm.  Jones v. United States, 534 F.2d 53, 54 (5th Cir. 1976); Cowart v. United States, 617 F.2d 112, 116 (5th Cir. 1976).  Under this standard, federal prisoners may recover against the government for injuries sustained during confinement in prison so long as their damages were cause by the negligence of government employees.  United States v. Muniz, 374 U.S. 150, 150 (1963).

(2) Breach of Duty

Though acknowledging its duty to Owens, the government contends that the record clearly shows that it did not breach that duty in any manner.  In support of this contention, the defendant notes that Owens was examined and treated for his reported symptoms at every instance that the plaintiff complained to the medical staff.  Moreover, the government also submits that Owens was taken to local hospital for further diagnosis after it became clear that treatment at the facility was not effective.  The government

argues:

> Owens was offered the opportunity of surgery the first time he was taken to the hospital, and he refused. Owens has not shown the hospital had any duty to get him the surgery when he consented. Even if the institution did still have a duty to get Owens the surgery, they met the duty when Owens was sent back out for evaluation in preparation for surgery. This time the oral surgeon would not do the surgery because the surgical area had begun the healing process. Alternative treatment was then offered to Owens, which he also refused.

See Def. Memo. in Support of Motion to Dismiss, at 7.

Apparently, the government is arguing that it fulfilled any obligation it had to Owens when it offered him surgery and he initially refused that treatment. However, there is no support for the proposition that once an inmate refuses treatment, the prison officials have no further duty to provide care for that individual in the event that he wishes to pursue that treatment at a later date. It is not contested that the plaintiff asked to have the surgery performed to mend his jaw, albeit at a time subsequent to his first refusing that treatment. The government, however, had a continuing duty to provide for Owens' medical needs, and summary judgment is not warranted based upon argument that the government's obligation to do so was extinguished once Owens initially refused treatment.

Moreover, the government's assertion that it did not breach its duty of care because the "oral surgeon would not do the

surgery" glosses over an important fact:[2] the surgeon would have performed corrective surgery; however, to do so would have required that Owens' jaw be refractured.  For undisclosed reasons, the BOP was unwilling to transfer the plaintiff to a BOP Medical Center where he could receive post-operative rehabilitative services.  Thus, the government's claim that it had no duty to provide for the surgery under the auspices that it was no longer available to Owens also fails to justify summary judgment for the defendant.

The government further contends that Owens' failure to present any medical testimony that the treatment offered deviated from acceptable professional conduct warrants summary judgment.  See Austin v. Wells, --- So. 2d ----, 2006 WL 146101, at *5 (Miss. Jan. 19, 2006) ("In order to prevail in a medical malpractice action, a plaintiff must establish, by expert testimony, the standard of acceptable professional practice; that the defendant physician deviated from that standard; and that the deviation from the standard of acceptable professional practice was the proximate cause of the injury of which plaintiff complains").  As already stated, however, it is clear that at least one oral surgeon

---

[2] The Court assumes that the government's statement concerning the unwillingness of the surgeon to proceed with Owens' surgery is referring to the surgeon visited by the plaintiff on August 28, 2003.  Of course, Owens also visited an oral surgeon in December of 2003 who stated that surgery was not a viable treatment at that time.  Regardless, the government fails to address the fact that, prior to the time that surgery allegedly became a non-viable treatment, the oral surgeon recommended that Owens' jaw be refractured and set, but that the BOP was unwilling to accommodate that recommendation.

recommended that Owens' jaw be repaired by refracturing and resetting it. The government refused to allow Owens to have that treatment. Thus, Owens' complaint may be viewed not only as one alleging that the prison-provided care constituted medical malpractice, but rather that the prison refused to allow him to receive the proper and recommended medical care in the first place. Moreover, subsequent to the filing of the government's motion for summary judgment, the plaintiff has designated his treating physicians to testify as to the cause and extent of his alleged injury.[3] Therefore, there remains a genuine issue of material fact as to whether or not the government breached its duty to provide proper medical care to the plaintiff while he was incarcerated.[4]

## CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that the government's Motion to Dismiss or in the Alternative for Summary Judgment is not well-taken. Accordingly,

IT IS HEREBY ORDERED that the government's Motion to Dismiss or in the Alternative for Summary Judgment [**docket entry no. 9**] is **DENIED**.

---

[3] See Pl. Designation of Experts dated February 9, 2006 [docket entry no. 24].

[4] There is no need to further address the causation and damage elements of Owens' negligence claim inasmuch as the government does not contend that the plaintiff has failed to carry his burden on those elements of his claim.

SO ORDERED, this the 9th day of March, 2006.

<u>S/DAVID BRAMLETTE</u>
UNITED STATES DISTRICT JUDGE